IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DIANE T. STOPKA,             )
                             )
           Plaintiff,        )
                             )
      v.                     )   No. 10 C 5326
                             )
MICHAEL J. ASTRUE, Commissioner )
of Social Security,          )
                             )
           Defendant.        )

# OPINION AND ORDER

In March 2006, plaintiff Diane Stopka, then 53 years old, suffered a heart attack. She thereafter applied for social security disabled widow's and supplemental security income benefits. Her claim for benefits was denied initially and on reconsideration. Following a hearing before an Administrative Law Judge ("ALJ"), benefits were again denied. The Appeals Council denied review. The issue before the court is whether the ALJ's Step-Two determination that plaintiff did not have a severe impairment is supported by substantial evidence.

The ALJ's determination is upheld if supported by substantial evidence. *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "The ALJ is not required to address every piece of evidence or testimony presented, but must provide a 'logical bridge' between the evidence and [her] conclusions. We view the record as a whole but do not reweigh the evidence or substitute our judgment for that of the ALJ." *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

At Step Two, the burden is on plaintiff to establish that she has an impairment that is severe. *Castile v. Astrue*, 617 F.3d 923, 926 (7th Cir. 2010). A severe impairment is an "impairment or combination of impairments which significantly limits [one's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c); 404.1521(a); *Castile*, 617 F.3d at 926. Basic work activities are "the abilities and aptitudes necessary to do most jobs," including "[p]hysical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling." 20 C.F.R. § 404.1521(b); *Orr v. Astrue*, 2010 WL 4192831 *9 (N.D. Ill. Oct. 18, 2010). "[A]n impairment(s) that is 'not severe' must be a slight abnormality (or a combination of slight abnormalities) that

has no more than a minimal effect on the ability to do basic work activities." Social Security Ruling 96-3p, 1996 WL 374181 *1; *Jones v. Astrue*, 2011 WL 2416928 *4 (C.D. Ill. June 13, 2011). Step Two has been characterized as a *de minimis* screening device that disposes of groundless claims. *Johnson v. Sullivan*, 922 F.2d 346, 347 (7th Cir. 1990); *Saldana v. Astrue*, 2011 WL 1059694 *3 (N.D. Ill. March 21, 2011); *Madrid v. Astrue*, 2011 WL 528810 *1 (N.D. Ill. Jan. 25, 2011); *Monhaut v. Astrue*, 2010 WL 2545163 *4 (N.D. Ind. June 17, 2010) (quoting *Samuel v. Barnhart*, 295 F. Supp. 2d 926, 952 (E.D. Wis. 2003) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir.1996))); *Wools v. Astrue*, 2009 WL 1148219 *15 n.3 (S.D. Ind. April 28, 2009) (quoting *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988)); *Elkins v. Astrue*, 2009 WL 1124963 *8 (S.D. Ind. April 24, 2009) (citing *Webb v. Barnhart*, 433 F.3d 683, 688 (9th Cir. 2005)); *Leonard v. Barnhart*, 2006 WL 3523103 *12 (W.D. Wis. Dec. 4, 2006) (quoting *Webb*, 433 F.3d at 686-87); *Salazar v. Barnhart*, 2004 WL 2966919 *5 (N.D. Ill. Nov.24, 2004). *But compare Boyd v. Astrue*, 2009 WL 5149136 *9 (N.D. Ill. Dec. 28, 2009). "Great care should be exercised in applying the not severe impairment concept." Social Security Ruling 85-28, 1985 WL 56856 *4; *Boyd*, 2009 WL 5149136 at *10; *Rasnick v. Astrue*, 2009 WL

1704712 *8 (N.D. Ind. June 17, 2009); *Masch v. Barnhart*, 406 F. Supp. 2d 1038, 1053 (E.D. Wis. 2005).

The only issue before this court is whether substantial evidence supports the ALJ's conclusion that plaintiff did not have a severe impairment. Even if the ALJ erred in finding no severe impairment, the Commissioner may still deny the claim at a later Step of the sequential analysis. Nevertheless, if it is held that it was error to find no severe impairment, this court cannot consider the additional Steps and must instead remand the case to provide the Commissioner with the first opportunity to consider Step Three and any further Steps. *Johnson v. Heckler*, 741 F.2d 948, 952-53 (7th Cir. 1984); *Madrid*, 2011 WL 528810 at *2; *Carter v. Astrue*, 2007 WL 2804889 *1 (N.D. Ill. Sept. 20, 2007).

Plaintiff was born in 1952. She has a high school education. Plaintiff has been widowed since sometime prior to March 2006. From 1994 to 2004, she performed clerical work in an office. On May 22, 2006, plaintiff filed her disability benefits application alleging she had been disabled since February 2, 2006. She listed her disabling conditions as "heart attack, pain in upper back, extreme fatigue, shortness of breath." A.R. 169. As to a limiting effect on work, she stated: "I am extremely fatigued, I can sleep 14 hours a night, be awake for 2 hours then go back to sleep. Any repetitive motion causes pain in my upper

back. I have shortness of breath with any movement. I have numbness on left side of the chest from the surgery. I can't use a computer because typing causes pain in back and arm." *Id.*

At the June 2009 hearing before the Administrative Law Judge ("ALJ"), plaintiff testified to the following. When she uses her right arm, she has extremely sharp pain from the back of her neck, across her shoulder, and down her chest. This pain occurred when writing, cutting food, and stirring batter. She still had fatigue and shortness of breath, and would become tired and sleepy during the day despite sleeping 10-to-11 hours at night. She had been engaged in crochet, but stopped due to pain. She no longer entertained or cooked because it was too exhausting. Plaintiff testified she cannot use a computer for more than 10 minutes due to pain using the mouse, stand more than 20 minutes, or sit in excess of 30 minutes. She also stated she becomes short of breath walking to the corner and back.

On March 16, 2006, plaintiff went to the emergency room with chest discomfort and shortness of breath. Dr. Anna Hertsberg, a cardiologist, performed various coronary tests and diagnosed plaintiff as having: "1. Moderate reduction in global left ventricular systolic function with extensive hypokinesis of the anterior wall and estimated ejection fraction of 35 to 40%. 2. Moderate left

ventricular diastolic dysfunction. Hemodynamically significant stenosis at the ostium of the left anterior descending artery, not amenable for percutaneous intervention. Mild diffuse coronary atherosclerosis of the right coronary artery and left circumflex artery." A.R. 234. Dr. Hertsberg recommended bypass surgery for the left anterior descending artery. On March 17, Dr. Janice Klich performed the bypass surgery. On March 20, plaintiff was discharged in good condition and instructed to follow up with her primary care physician, as well as Drs. Klich and Hertsberg. On March 27, plaintiff had a follow-up with a new primary care physician, Dr. Nicholas Papanos. On the form she completed for Dr. Papanos, she indicated she did not have shortness of breath. Dr. Papanos's notes do not contain any mention of fatigue.

On September 7, 2006, plaintiff went to the emergency room with chest pain. The notes from that visit indicate no shortness of breath and do not mention any pain other than mid-sternal chest pain. Plaintiff was discharged with instructions.

On September 13, 2006, plaintiff had a surgery follow-up appointment with Dr. Samuel Goldstein, a cardiologist and colleague of Dr. Hertsberg. Plaintiff told Dr. Goldstein that she was extremely fatigued and could fall asleep at the drop of a hat, which was a new sensation since her surgery. Dr. Goldstein

noted that plaintiff's postoperative care was unremarkable. In May 2006, plaintiff had taken an exercise stress test as a precursor to cardiac rehabilitation, but then did not enter into a rehabilitation program. Dr. Goldstein provided a prescription for phase II cardiac rehabilitation and recommended a hypothyroidism work-up if fatigue continued. Absent fatigue, he encouraged plaintiff to exercise on a regular basis. In a November 2006 report to the ALJ, Dr. Goldstein's diagnosis was atherosclerotic heart disease. He stated she should stop physical activity if fatigued and that she should be able to perform activities of daily living, but on a slow deliberate pace. He noted the May 2006 ECG showed no ischemia.

In December 2006, Dr. Scott Kale, an internist, conducted a consultative examination. Plaintiff is listed as 5' 6" tall and 185 pounds. Plaintiff reported incisional pain near the sternum and right cervical spine discomfort when using a computer or telephone for a half hour. A neck examination showed no enlargement of the lymph nodes, thyroid gland, or carotid artery, but did find moderate tenderness at the base of the right cervical spine. As to plaintiff's heart, Dr. Kale found: "Regular rhythm. Normal 1st and 2nd heart sounds, no 3rd or 4th sounds. No rubs, clicks or murmurs." A.R. 269. His summary of the musculoskeletal examination was: "The claimant could walk 50 feet without support. The gait was not antalgic. The claimant was able to grasp and

manipulate objects. Fine motion is intact. Grip strength is 5/5 bilaterally. The claimant is able to fully extend the hands, make fists and oppose fingers. The range of motion of the shoulders, elbows, and wrists is normal. Strength of the proximal muscles of the upper and lower extremities is 5/5 power. The range of motion of the hips, knees and ankles is normal. Range of the cervical spine is normal. The range of motion of the lumbar spine reaches 80/90 degrees of flexion and 20/30 degrees of extension. Straight leg raise test: negative. Heel and toe standing are normal. The claimant was able to get off a chair without using hands." *Id.* Reflexes were equal in the upper and lower extremities. Dr. Kale's impression listed two problems: a history of coronary artery disease and myofascial pain of the cervical spine.

During July and October 2006 examinations by her primary care doctor, plaintiff complained of fatigue. Dr. Papanos's notes for the July appointment state no shortness of breath. Shortness of breath was reported in October. On October 2, 2006, Dr. Papanos assessed plaintiff as having anemia. In March 2007, plaintiff complained to Dr. Papanos about ankle swelling and pain across her left calf. In June 2007, she reported she could not do cardiac rehabilitation due to insurance issues. Dr. Papanos assessed her as having coronary artery disease, thrombophlebitis, and a popliteal cyst behind her left knee. On June 20, 2007,

Dr. Michael Oberhofer conducted a vascular examination of plaintiff's lower extremities. He found normal caliber and good flow, with no evidence of acute deep venous thrombosis.

On January 2, 2007, reviewing physician Dr. Ernst Bone examined the medical records and opined plaintiff's coronary artery disease was non-severe. His entire explanation is: "66", 185#. 115/74. had bypass x1 in March of 2006. no current cardiac symptoms. lungs clear. no neurological deficits. full motor power in all extremities." A.R. 274.

On August 16, 2007, Dr. Kale conducted a second consultative examination. At the time, plaintiff weighed 206 pounds. Plaintiff reported chronic pain in the area of the scar and intermittent radiation of discomfort from her cervical spine into her right hand which interferes with her ability to write, grasp, and perform repetitive motions. She continued to report marked fatigue and shortness of breath. This time, his examination of her neck did not disclose tenderness. The musculoskeletal assessment was the same as the prior examination except that motion of the lumbar spine had decreased to 70/90. This time, Dr. Kale's impression listed three problems: "[1] Status post myocardial infarction with surgery to repair an obstructed left anterior descending artery with chronic chest pain secondary to myofascial pain. [2] Complaints of cervical spine

pain with radicular features with no objective findings. [3] Shortness of breath on exertion with no evidence of edema, cyanosis, clubbing or signs of congestive heart failure."

On September 11, 2007, reviewing physician Dr. Virgilio Pilapil examined the medical record and also considered Dr. Bone's prior report. Dr. Pilapil concluded:

> This claimant had been denied non-severe at the initial level. A review of that decision appears to be technically and substantively correct. On appeal the claimant states she gets pain in the back and neck when she tries to use her right arm. She states the pain did not go away after surgery.
> On appeal additional MER was obtained in the form of an internal medicine consultative exam. The claimant has a history of CABG [bypass surgery] x1 without current symptoms of chest pain or cardiac origin. She states she has fatigue and SOB. Her lungs were clear without clubbing, cyanosis or edema. There was no signs of CHF. Her gait was unimpaired as was her ability to perform both fine and gross manipulations. ROM of the shoulders, elbows and wrists was normal. UE power proximally was 5/5. There was no focal neurological deficits. Cranial nerves were intact. Reflexes were equal in both the upper and lower extremities. There was no objective findings on clinical exam regarding her complaints of cervical spine pain with radicular features.
> She did have a well-healed sternotomy scar, no extra heart sounds. Anterior chest tender to palpations. ROM of the Lumbar spine was 70 flexion and 20 extension without clinical evidence of radiculopathy or pain. SLR was negative.

A.R. 286.

On May 5, 2008, Dr. Papanos examined plaintiff and also completed a Medical Assessment Questionnaire. He reported the 2006 myocardial infarction and bypass surgery. He diagnosed her as currently having "[n]umbness over the sternal wound & left side of chest wall. Right shoulder chronic pain with Decreased Range of Motion since 3/06. [Left] knee pain." A.R. 242. As objective medical evidence, he stated: "continues to have subjective pain. Unable to continue with work on the computer and other daily activities at home after about 10 minutes of work." *Id.* As to prognosis, he stated her conditions appear to be chronic and she needs further work-up by an orthopedic surgeon and others, but cannot afford such an evaluation or imaging studies. He stated she could stand, walk, and/or sit eight hours in a workday if provided intermittent resting, but would need rest (including lying down) at least every three hours due to shortness of breath and fatigue. She could carry five pounds ten feet and occasionally lift five to ten pounds. She could do limited pushing, pulling, and reaching and was unable to squat due to left knee pain. He stated plaintiff was unable to work on a computer for more than ten minutes due to shoulder pain. Further, Dr. Papanos answered yes that plaintiff would have reasonably marked limitations (a) in her ability to complete a normal workday or workweek due to

interruptions from her symptoms and (b) performing at a consistent pace without an unreasonable number and length of rest periods due to symptoms.

During the May 8, 2008 examination, plaintiff reported intermittent shoulder pain that was 5-8 on a 10-point scale. Dr. Papanos recommended a cervical x-ray. At this appointment, plaintiff weighed 205 pounds. Dr. Papanos's notes indicate no shortness of breath. On June 1, 2009, plaintiff was again examined by Dr. Papanos. On this date, she weighed 208 pounds. Plaintiff continued to report pain radiating from her arm. Dr. Papanos's notes again indicate no shortness of breath. There is no mention of fatigue in the notes.

The ALJ found that plaintiff had coronary artery disease, but, following the bypass surgery, she did not have a severe impairment. The ALJ rejected plaintiff's testimony regarding pain, shortness of breath, and fatigue as not credible in that it was not supported by objective medical evidence. The ALJ also noted that plaintiff had not reported shortness of breath, fatigue, or pain during a number of examinations. She found plaintiff's subjective complaints "lack a consistency which would be suggestive of the degree of debilitation that the claimant alleges." A.R. 20. The ALJ gave significant weight to the reviewing physicians' opinions that plaintiff's condition was not a severe impairment. The ALJ did not give significant weight to many of Dr. Papanos's conclusions on the ground that they

were not supported by objective medical findings. The ALJ also rejected any limitations based on the cyst behind the knee because plaintiff did not complaint of pain in her lower extremities. The ALJ also limited the weight given to the reports of Dr. Goldstein and Dr. Kale because there were no objective findings supporting plaintiff's reports of pain and fatigue. Further, the ALJ gave less weight to Dr. Goldstein's report since it was based on an examination eight months after the bypass so not necessarily descriptive of a condition that would exist for 12 consecutive months.

Plaintiff emphasizes that the issue before the court is only whether there is a severe impairment, not whether plaintiff is actually disabled. Plaintiff contends the ALJ improperly discredited her pain testimony and failed to give adequate weight to the reports of the treating physicians. Plaintiff also contends the ALJ should have further developed the record by ordering further tests, some of which had been recommended by physicians but not done due to plaintiff's financial limitations.

> The ALJ must determine a claimant's credibility only after considering all of the claimant's "symptoms, including pain, and the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a); *Arnold v. Barnhart*, 473 F.3d 816, 823 (7th Cir. 2007) ("subjective complaints need not be accepted

insofar as they clash with other, objective medical evidence in the record."); *Scheck v. Barnhart*, 357 F.3d 697, 703 (7th Cir. 2004). If the claimant's impairments reasonably could produce the symptoms of which the claimant is complaining, the ALJ must evaluate the intensity and persistence of the claimant's symptoms through consideration of the claimant's "history, the signs and laboratory findings, and statements from [the claimant], [the claimant's] treating or nontreating source, or other persons about how [the claimant's] symptoms affect [the claimant]." 20 C.F.R. § 404.1529(c); *Schmidt [v. Barnhart]*, 395 F.3d [737,] 746-47 [(7th Cir. 2005)] ("These regulations and cases, taken together, require an ALJ to articulate specific reasons for discounting a claimant's testimony as being less than credible, and preclude an ALJ from merely ignoring the testimony or relying solely on a conflict between the objective medical evidence and the claimant's testimony as a basis for a negative credibility finding.").

Although a claimant's complaints of pain cannot be totally unsupported by the medical evidence, the ALJ may not make a credibility determination "solely on the basis of objective medical evidence." SSR 96-7p, [1996 WL 374186] at *1. *See also Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004); *Carradine v. Barnhart*, 360 F.3d 751, 754 (7th Cir. 2004) ("If pain is disabling, the fact that its source is purely psychological does not disentitle the applicant to benefits."). Rather, if the

> [c]laimant indicates that pain is a significant factor of his or her alleged inability to work, the ALJ must obtain detailed descriptions of the claimant's daily activities by directing specific inquiries about the pain and its effects to the claimant. She must investigate all avenues presented that relate to pain, including claimant's prior work record, information and observations by treating physicians, examining physicians, and third parties. Factors that must be considered include the nature and intensity of the claimant's pain, precipitation and

aggravating factors, dosage and effectiveness of any pain medications, other treatment for relief of pain, functional restrictions, and the claimant's daily activities. (internal citations omitted).

*Luna v. Shalala*, 22 F.3d 687, 691 (7th Cir. 1994). *See also Zurawski v. Halter*, 245 F.3d 881, 887-88 (7th Cir. 2001).

In addition, when the ALJ has discounted the claimant's description of pain because it was inconsistent with the objective medical evidence, she must make more than 'a single, conclusory statement . . . . The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, at *2. *See Zurawski*, 245 F.3d at 887; *Diaz v. Chater*, 55 F.3d 300, 307-08 (7th Cir. 1995) (finding that the ALJ must articulate, at some minimum level, his analysis of the evidence). She must "build an accurate and logical bridge from the evidence to [her] conclusion." *Zurawski*, 245 F.3d at 887 (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)). When the evidence conflicts regarding the extent of the claimant's limitations, the ALJ may not simply rely on a physician's statement that a claimant may return to work without examining the evidence the ALJ rejected. *See Zurawski*, 245 F.3d at 888 (quoting *Bauzo v. Bowen*, 803 F.2d 917, 923 (7th Cir. 1986)) ("Both the evidence favoring the claimant as well as the evidence favoring the claim's rejection must be examined, since review of the substantiality of evidence takes into account whatever in the record fairly detracts from its weight.") (emphasis in original).

*Biggs v. Astrue*, 2011 WL 6736063 *17-18 (N.D. Ind. Dec. 1, 2011), *mag. j. report adopted*, 2011 WL 6736058 (N.D. Ind. Dec. 21, 2011).

Here, the ALJ carefully considered all the evidence and explained her reasoning. As previously discussed, however, the Step-Two standard is a low threshold. Following plaintiff's heart attack, an examination revealed a stenosis in the left anterior descending artery. Bypass surgery treated that impairment. The bypass surgery did not treat the mild atherosclerosis that was found in the right coronary artery and left circumflex artery. The treating and examining physicians continued to diagnose plaintiff as having atherosclerotic heart disease. The ALJ, though, found "[t]here is no evidence of recurrent or residual cardiac disease," A.R. 20, and limited her finding of an impairment to the past heart attack and bypass surgery, A.R. 17. Still, the ALJ found that these impairments could be reasonably expected to produce plaintiff's alleged symptoms. A.R. 18. The central issue is whether the ALJ's determination that plaintiff's claimed pain, fatigue, and shortness of breath lacked credibility is supported by substantial evidence. In evaluating this question it must be kept in mind that, in satisfying the Step-Two severe impairment requirement, plaintiff's testimony need not be fully credited; it only needs to be credited enough to satisfy Step Two's low threshold.

While the ALJ notes that plaintiff did not mention shortness of breath and fatigue at every doctor's appointment, her rejection of plaintiff's subjective complaints is essentially based on the fact that there was no objective medical

evidence to support those symptoms. As previously discussed, lack of objective medical support cannot be the sole basis for finding a claimant lacks credibility. Plaintiff's first appointment with Dr. Papanos was one week after she was released from the hospital following surgery. Although fatigue is not mentioned in Dr. Papanos's notes, at that point, plaintiff would not yet be able to distinguish the immediate effects of surgery from general fatigue. She thereafter consistently raised fatigue at appointments as well as during her June 2009 testimony before the ALJ. That Dr. Papanos's June 1, 2009 notes do not mention fatigue does not support a finding of lack of consistency in reporting fatigue. The ALJ found that plaintiff reported pain "somewhat more consistently." A.R. 20. Additionally, in making the credibility determination regarding symptoms, the ALJ failed to take into consideration plaintiff's testimony regarding daily living and her past work history. Plaintiff had consistently worked until she had the heart attack and surgery. There is no indication that she had been hesitant to engage in work activity prior to her post-surgery symptoms. Plaintiff also testified that she restricted her activities after the surgery. Prior to surgery she regularly cooked and crocheted, activities (particularly the latter) that did not require much exertion. After surgery, she stopped engaging in those two activities. The record establishes that plaintiff had limiting pain and fatigue that was at least limiting enough to

satisfy the low Step-Two severity standard. Substantial evidence does not support the ALJ's credibility determination that resulted in a determination that plaintiff did not satisfy the Step-Two requirement. This case must be remanded to consider further Steps.

Plaintiff's other contention is that the ALJ should have further developed the record, especially since plaintiff's limited means had prevented her from obtaining all the medical treatment that her treating physicians had recommended. Plaintiff contends the ALJ should have ordered another exercise ECG, none having been performed since shortly after the bypass surgery. In May 2006, Dr. Goldstein had recommended a hypothyroidism work-up if fatigue continued. In May 2008, Dr. Papanos recommended an orthopedic work-up and imaging that he noted plaintiff could not afford. Plaintiff contends that further medical tests could have provided objective medical evidence supporting conclusions of Dr. Goldstein and Dr. Papanos that the ALJ had rejected as unsupported.

Since the case is otherwise being remanded, it is unnecessary to resolve this issue. It is noted that deference is given to an ALJ's decision as to how much evidence is sufficient to develop the record fully and what measures (including additional consultative examinations) are needed in order to accomplish that goal.

*Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009); *Kendrick v. Shalala*, 998 F.2d 455, 458 (7th Cir. 1993). An ALJ should order a consultative examination when "the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision on [a] claim." 20 C.F.R. § 404.1519a(b); *Skinner v. Astrue*, 478 F.3d 836, 844 (7th Cir. 2007). *See also Hawkins v. Chater*, 113 F.3d 1162, 1169 (10th Cir. 1997) ("ALJ should order a consultative examination when evidence in the record establishes a reasonable possibility of the existence of a disability and the result of the consultative examination could reasonably be expected to be of material assistance in resolving the issue of disability"). A consultative examination is normally required if the evidence is ambiguous, if specialized medical evidence is required but missing from the record, or if there is a change in a condition but the current severity of the impairment is not established. 20 C.F.R. § 404.1519a(b). On remand, it is left to the ALJ's discretion whether further medical testing is warranted.

IT IS THEREFORE ORDERED that plaintiff's motion for summary judgment [10] is granted. The Clerk of the Court is directed to enter judgment in

favor of plaintiff and against defendant remanding this case to the Commissioner of Social Security for further proceedings.

ENTER:

*William T. Hart*

UNITED STATES DISTRICT JUDGE

DATED: JANUARY 26, 2012